Nicholas P. Milewski, Esq. (N.J. Bar ID# 043992003)
**METS SCHIRO & MCGOVERN, LLP**
838 Green Street, Suite 102
Iselin, NJ 08830
(732) 636-0040
Email: nmilewski@msmlaborlaw.com
*Attorneys for Plaintiff, Kairy Acevedo*

| | |
|---|---|
| KAIRY ACEVEDO, <br><br> Plaintiff, <br><br> v. <br><br> BOROUGH OF PROSPECT PARK, MAYOR MOHAMED T. KHAIRULLAH, BUSINESS ADMINISTRATOR INTASHAN CHOWDHURY, JOHN/JANE DOES 1-10, <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY <br> PASSAIC COUNTY: LAW DIVISION <br><br> Docket No.: PAS-L- <br><br> Civil Action <br><br><br> **COMPLAINT, JURY DEMAND AND DESIGNATION OF TRIAL COUNSEL** |

Plaintiff, KAIRY ACEVEDO, (hereinafter, "Plaintiff"), by way of Complaint against Defendants, BOROUGH OF PROSPECT PARK (hereinafter, the "Borough"), MAYOR MOHAMED T. KHAIRULLAH (hereinafter, "Mayor Khairullah") and BUSINESS ADMINISTRATOR INTASHAN CHOWDHURY (hereinafter, "Mr. Chowdhury," collectively "Defendants") pleads as follows:

### *PARTIES*

1.     Plaintiff is a resident and citizen of Bergen County, State of New Jersey, and resides at 100 Speidel Avenue, Elmwood Park, New Jersey 07407. Plaintiff was employed by the Borough as Acting Court Administrator from April 1, 2021 until December 31, 2021. Plaintiff

1

also served as the Borough's Director of Recreation from 2019 until July 26, 2021.

2.     Defendant Borough is a municipal public body corporate which is established and governed by the laws and statues of New Jersey at N.J.S.A. 40A:60-1, *et. seq.*  The Borough conducts is operations at 106 Brown Avenue, Prospect Park, County of Passaic, New Jersey 07508.

3.     Defendant Mayor Khairullah is the Mayor of the Borough.  He exercises authority pursuant to Borough Code Article I, Section 5-2.  Among other duties, he nominates and, with the advice and consent of Council, appoints all officers.

4.     Defendant Mr. Chowdhury is the Business Administrator of the Borough.  He exercises supervision and management over the day-to-day operations of the Borough.  He is responsible "for the maintenance of sound personnel policies," and "[i]ntegrating, coordinating, and supervising the functions of all departments with the general administration in carrying out Borough functions and the policies of the Governing Body."  See https://www.prospectpark.net/government/borough_administrator.php, last visited October 27, 2021.

5.     Defendants John/Jane Does 1-10 are past and present supervisors of Plaintiff during her employment at the Borough, or officers and/or officials of the Borough.

### *JURISDICTION AND VENUE*

6.      Jurisdiction is proper in the Superior Court of New Jersey, Civil Division because the claims set forth herein arise and occur under the laws of the State of New Jersey and all parties conduct business within the State of New Jersey, County of Passaic.

7.     Venue is proper in the Superior Court of New Jersey, Civil Division, Passaic County Vicinage pursuant to R. 4:3-2(a)(2), because the Borough of Prospect Park is a party

2

Defendant, the cause of action arose in the Borough, the Borough is situated in the County of Passaic, and all parties conduct business in the County of Passaic.

### *FACTS COMMON TO ALL COUNTS*

8.     Plaintiff was employed by the Borough as Acting Court Administrator from April 1, 2021 until December 31, 2021.

9.     Plaintiff simultaneously served as the Borough's Director of Recreation from 2019 through July 26, 2021, which overlapped with her duties as Acting Court Administrator by a period of approximately four (4) months.

10.    Plaintiff's work performance was, at all times, satisfactory and met and/or exceeded expectations.

11.    Pursuant to the administrative rules promulgated by the Superior Court of New Jersey, Court Administrators may serve for three (3) years in a non-certified capacity, and must obtain certification within that three (3) year period or they will not be eligible to serve as Administrator any longer.

12.    Naomi Del Valle-Kasiv served as the Borough's Court Administrator for a period of thirteen (13) years without being certified, until March 31, 2021.

13.    As of April 1, 2021, Ms. Del Valle-Kasiv was not eligible to serve in the position of Court Administrator any longer (and had not been eligible for a decade).

14.    On April 1, 2021, Plaintiff was made Acting Court Administrator.

15.    Upon information and belief, an audit subsequently revealed that, prior to Plaintiff's service as Acting Court Administrator, the Borough's Municipal Court was the most disorganized municipal court in the County and failed to meet AOC mandates, and that Ms. Del Valle-Kasiv had converted a significant amount of money while in her position as Court

3

Administrator.

16.     Plaintiff worked approximately forty (40) hours per week as Acting Court Administrator.

17.     At the time that Plaintiff was made Acting Court Administrator, Mayor Khairullah and Mr. Chowdhury ordered Plaintiff to continue to perform the functions of Director of Recreation until the Borough found a replacement.

18.     While serving in the full-time position of Acting Court Administrator, Plaintiff continued to perform the duties of Director of Recreation.

19.     Plaintiff feared that, if she did not continue to perform the duties of Director of Recreation as Mayor Khairullah and Mr. Chowdhury had ordered, her status as Acting Court Administrator would be terminated or some other reprisal would be visited upon her.

20.     The duties of Director of Recreation are set forth in Article IV, Section 5-39(A) of the Borough Code, which provides as follows:

> A. The Director of Recreation oversees the Advisory Board of Recreation and its programs, searching for grants to initiate new programs and developing means of communication between local government, residents and board members. The Director of Recreation shall also create and implement events for the residents of Prospect Park to encompass all age groups, including educational events, family picnics, carnivals, senior activities, veterans events and volunteer programs. The Director of Recreation shall also work with all existing organizations as a liaison to the office of the Mayor, Borough Council and its administration, act as an advisor to organizations that ask for assistance in planning programs, and help identify grants, sponsorships and other sources of funding for events. The Recreation Director shall make all decisions regarding same, subject only to approval of the Council. The Recreation Director shall have the power to adopt rules, regulations and bylaws for the proper conduct of the duties of the Advisory Board of

4

Recreation. The Recreation Director shall annually submit a budget for the expenses of the Recreation Department to the Mayor and Council for approval. The Recreation Director shall periodically make full and complete reports to the Mayor and Council of the Borough of Prospect Park, the timing of which, shall be determined by the Mayor and Council. The Recreation Director shall supervise, control, and approve all recreation programs and public entertainment activities sponsored by the Borough of Prospect Park and provide information to the Mayor and Council through the appropriate committee regarding the condition and use of any public recreation areas in the Borough of Prospect Park. In the event that a dispute arises between the Director and/or the Advisory Committee relating to the institution or approval of a recreation program and/or activity, said dispute shall be submitted to the members of the Borough Council Recreation Committee to approve or disapprove the recreation program and/or activity by a majority vote.

21.     As the Ordinance demonstrates, the duties of the Director of Recreation are extensive, yet Plaintiff continued to perform said duties even after she was appointed as Acting Court Administrator because Mayor Khairullah and Mr. Chowdhury ordered her to do so.

22.     Plaintiff performed the duties of Director of Recreation on her own personal time, without any form of compensation from the Borough.

23.     As Director of Recreation, Plaintiff was required to work approximately thirty (30) hours per week.

24.     Plaintiff was, therefore, working seventy (70) hour weeks performing the duties of Acting Court Administrator and also Director of Recreation.

25.     The Superior Court, Passaic County Vicinage, which supervised Plaintiff as Acting Court Administrator, advised Plaintiff that, pursuant to the judicial canons that govern the Superior Court, she was not permitted to work as Director of Recreation since the duties of the job conflicted with the duties of Acting Court Administrator, insofar as Acting Court

5

Administrator is supposed to separate herself from other branches of government.

26.    Plaintiff complained to Mayor Khairullah and Mr. Chowdhury about being forced to perform the extensive duties of the Director of Recreation while simultaneously performing the conflicting duties of Acting Court Administrator, and about the fact that she was forced to perform the duties of Director of Recreation without any form of compensation from the Borough.

27.    Plaintiff also complained to Municipal Judge John Abdelhadi that she was forced to perform the conflicting duties of both positions and was only being paid for her work as Acting Court Administrator.

28.    Every time Plaintiff raised this complaint, Mayor Khairullah and Mr. Chowdhury repeatedly advised Plaintiff that they needed her to continue to perform the duties of Director of Recreation until they found a replacement.

29.    Plaintiff assented to Mayor Khairullah and Mr. Chowdhury's demand that she continue performing the duties of Recreation Director for no compensation because she feared that refusing would impact her job as Acting Court Administrator or result in some other reprisal.

30.    The Borough was, in effect, forcing Plaintiff to work a second job as Director of Recreation, in addition to her full-time job of Acting Court Administrator, in effect working two (2) full-time jobs, with no compensation of any kind from the Borough.

31.    As time went on, working this large number of hours while receiving no compensation for her work as Recreation Director caused Plaintiff extreme emotional distress and Plaintiff eventually sought and received medical treatment for same.

**Digitizing Court Files**

32.     Soon after Plaintiff had been appointed as Acting Court Administrator, Mr. Chowdhury ordered that all of the Municipal Court's files were to be digitized and stored in the "cloud" so that he was able to access them.

33.     There existed a program called "Doors," which is an outdated judiciary platform for digitizing files.  Mr. Chowdhury wanted all of the files digitized pursuant to this old program.

34.     Mr. Chowdhury did not realize that the Court no longer utilized Doors and the Court documents he wanted to access contained confidential personal identifiers and other confidential information, and could not be released to individuals who are not in the judiciary (like Mr. Chowdhury).

35.     Plaintiff disclosed to the Superior Court's Passaic County Vicinage Division Manager Sonya Noyes the fact that Mr. Chowdhury had ordered Plaintiff to digitize the Court's files and grant him access to same.

36.     Ms. Noyes advised Plaintiff that she was not able to give digitized files to Mr. Chowdhury since it would violate the law and administrative code.

37.     Plaintiff, therefore, objected to Mr. Chowdhury's order to grant him access to digitized files and disclosed his conduct to a public body.

38.     Plaintiff advised Mr. Chowdhury that she was not able to give him digitized Court files because it was against the Superior Court's protocols and against administrative rules and regulations.

39.     Defendants were aware that Plaintiff had complained to the Civil Division, since Ms. Noyes, and eventually even Judge Caposela from the Civil Division, advised Mr. Chowdhury that Plaintiff was not permitted to digitize Court files.

7

40.     Mr. Chowdhury was very angry that Plaintiff disclosed and objected to digitizing the Court's files and giving him access to same, and he engaged in various retaliatory actions over the following months.

41.     It seemed that anywhere Mr. Chowdhury could exercise power over Plaintiff, he did so in order to retaliate against her for disclosing and objecting to his order to digitize the Court files and give him access to same.

42.     For example, Mr. Chowdhury refused to hire a replacement to take over Plaintiff's job as Recreation Director and forced her to continue to work two (2)-time jobs for a single salary.

43.     Moreover, as a result of Plaintiff's objection to Mr. Chowdhury's order to digitize Court files, Mr. Chowdhury removed from the Court the ability to access the Zoom application. During the pandemic, Zoom access was absolutely necessary in order to conduct Court operations remotely, and removing Zoom access caused the Acting Court Administrator significant issues in attempting to operate the Court in an efficient manner.

44.     Mr. Chowdhury also began to send harassing text messages and emails to Plaintiff.

**Attempted Resignation as Director of Recreation**

45.     Meanwhile, in accordance with her complaints about being forced to work two (2) jobs, Plaintiff actually attempted to resign from the position of Director of Recreation on two (2) different occasions because of the psychological distress caused by performing the duties of that 30-hour per week position along with the full-time position of Acting Court Administrator.

46.     Insofar as Plaintiff had been appointed to the position of Director of Recreation

by the Mayor pursuant to Borough Code Article IV, Section 5-39(B) and she was often required to confer with the Mayor and Councilmembers regarding recreational issues, she was perceived as part of the Mayor's administration and this compromised her position as a representative and administrator of the judiciary, in violation of the judicial canons tht govern the Superior Court.

47.    On May 7, 2021, Plaintiff advised Mr. Chowdhury that she was resigning from the position of Director of Recreation.

48.    Plaintiff again complained that working as Director of Recreation violated judicial canons and administrative rules to the effect that Court Administrators are supposed to avoid the appearance of impropriety and maintain neutrality.

49.    Plaintiff also complained that she was using her personal time to perform the duties of the Director of Recreation and she was not being compensated for her work.

50.    As a result of her attempt to resign, Mr. Chowdhury ordered her into his office and demanded that she continue working as Director of Recreation for two (2) additional weeks, so that the Borough could fill the position with another individual.

51.    Plaintiff assented because she feared that refusing would impact her job as Acting Court Administrator or result in some other reprisal.

52.    The Borough did not fill the position of Recreation Director, however, and Plaintiff's appointment as Director of Recreation continued indefinitely without compensation.

53.     Plaintiff disclosed to Superior Court Division Manager Sonya Noyes the fact that Mayor Khairullah and Mr. Chowdhury were compelling Plaintiff to work as the Director of Recreation for the Borough, despite the fact that it violated judicial canons and administrative rules and despite the fact that she was not being compensated.

54.    The Superior Court's Passaic County Vicinage, which oversees the Borough's

9

Municipal Court and supervised Plaintiff as Acting Court Administrator, sent a letter to the Borough saying that Plaintiff was not permitted to function in the Director of Recreation position because she was Acting Court Administrator, and the fact that she held these conflicting positions violated judicial canons and administrative rules.

55.     Judge Abdelhadi expressed to Plaintiff that the Borough had taken far too long to find an individual other than Plaintiff to fill the Director of Recreation position, and that the Borough should not continue to compel Plaintiff to remain in the position of Director and perform the duties for no compensation.

56.     Despite these facts, the Mayor and Mr. Chowdhury continued to force Plaintiff to work in both positions.

57.     Upon information and belief, Mr. Chowdhury refused to search for candidates to replace Plaintiff in the position of Director of Recreation during the time period from April 1, 2021 through July 21, 2021.

58.     Upon information and belief, Mr. Chowdhury purposefully did not attempt to find someone to replace Plaintiff in the position of Director of Recreation in retaliation for Plaintiff's objection to digitizing the Court's files and granting him access to same, for Plaintiff's objection to the effect that working as Director of Recreation violated judicial canons and administrative rules, and for Plaintiff's objection to being denied compensation for her work as Director of Recreation.

**Political Contribution**

59.     Mr. Chowdhury has a history of requesting that Plaintiff contribute to the Mayor's campaign.

60.     In or around June 2021, Mr. Chowdhury had asked Plaintiff to contribute to the

Mayor's political campaign.

61.  Court Administrators are not permitted to contribute to political campaigns pursuant to Judicial Canons, and Plaintiff advised Mr. Chowdhury of this fact.

62.  Mr. Chowdhury nevertheless continued to demand that Plaintiff contribute, and even said to her that she should have her husband contribute so that the contribution would not be in her name, and thus would circumvent the rules.

63.  Plaintiff refused to place a contribution in her husband's name and refused to contribute all together.

64.  On June 29, 2021, Mr. Chowdhury sent Plaintiff a political flyer for an event that the Mayor was having, which served as an implicit reminder to Plaintiff that she should contribute.

65.  Mr. Chowdhury then sent a text message to Plaintiff on that same day that said "have your husband leave a $500 check" at the Mayor's event.

66.  Mr. Chowdhury sent this text message at 1:41 pm, during work hours, despite the fact that he is prohibited from engaging in political activity while at work.

67.  Mr. Chowdhury said to Plaintiff that "these are the things that the Mayor remembers," referring to political contributions.

68.  Mr. Chowdhury further said that Borough employees do not have to contribute at every event, but "when the Mayor asks," Borough employees should contribute to the campaign.

69.  Plaintiff did not ultimately contribute to the Mayor's campaign.

70.  Plaintiff was terminated in December 2021.

71.  Mr. Chowdhury was angry that Plaintiff refused to contribute to the Mayor's campaign.

72.     Upon information and belief, Mr. Chowdhury has told police applicants that, if they contribute to the Mayor's campaign, they will be hired by the Borough.

**Final Resignation as Director of Recreation**

73.     By July 22, 2021, Plaintiff reached a breaking point with respect to being forced to work an extra 30 hours per week of her own time as Director of Recreation and not being compensated for her effort.

74.     On July 22, 2021, Plaintiff submitted a second resignation letter, citing the conflict between the positions of Acting Court Administrator and Director of Recreation.

75.     This time, she refused to permit Mayor Khairullah and Mr. Chowdhury to order that she was not able to resign.

76.     As a reason for her resignation, Plaintiff stated that working as Director of Recreation violated judicial canons and administrative rules to the effect that Court Administrators are supposed to avoid the appearance of impropriety and to maintain neutrality.

77.     As another reason for her resignation, Plaintiff cited the hardship of using her personal time to perform the duties of the Director of Recreation and not being compensated for her work.

78.     From May 1, 2021 until her resignation on July 22, 2021, Plaintiff's salary as Acting Court Administrator came exclusively from the portion of the Borough's budget allotted for Court employees, yet Plaintiff was officially appointed to the positions of both Acting Court Administrator and Director of Recreation.

79.     On or about July 23, 2021, the Borough retroactively altered Plaintiff's payroll information to reflect that one-half of her salary was drawn from the Borough's Court budget, and one-half was drawn from the Borough's Recreation budget.

80.     The Borough was attempting to cover-up the fact that Plaintiff had been appointed and was working as Acting Court Administrator and being paid only in that capacity, but she was simultaneously appointed and working as Director of Recreation without compensation.

81.     On or about July 26, 2021, there was a Mayor and Council meeting at which a resolution was adopted acknowledging Plaintiff's resignation as Director of Recreation.

82.     There can be question that, from April 1, 2021 through July 22, 2021, Plaintiff officially held the position of Director of Recreation for the Borough without being paid.

83.     The first draft of the Borough's resolution failed to note that Plaintiff resigned from the position of Director of Recreation because the position conflicted and was incompatible with her position as Acting Court Administrator.

84.     Councilwoman Esther Perez advised Plaintiff that the resolution would be amended to reflect that Plaintiff resigned because the two positions conflicted and she could only perform the duties of one.

85.     The resolution was, in fact, amended and this second draft reflected that Plaintiff's resignation was a result of the conflict between the two positions.  The amended version of the resolution was adopted by the Council.

86.     At the next Mayor and Council meeting in August, a new, third draft of the resolution was adopted omitting the fact that Plaintiff's resignation was because of the conflict between the two positions, and saying that the amendment that had been made to the second draft of the resolution had been done without review by the Mayor, so it should not have been passed.

87.     Ultimately, the third amended resolution was adopted, omitting the fact that Plaintiff's resignation was because of the inherent conflict between the two positions.

88.     The Borough was attempting to conceal the fact that the two (2) positions conflicted, since Plaintiff had been forced to endure working in both positions for many months.

89.     The change in the drafts of the Resolution demonstrate that the Mayor was acutely aware of the conflict in the two positions, and went out of his way to try to deny that the conflict existed by ordering that the Resolution be altered a third time.

**Reprisals**

90.     Plaintiff has continued to be harassed up until the date she went out on psychological FMLA leave in October 2021.

91.     After Plaintiff resigned as Director of Recreation, Mr. Chowdhury ceased all communications with Plaintiff and would only communicate Borough business to Ms. Del Valle-Kasiv, who was still working in the court, despite the fact that Plaintiff was head of the Department.

92.     Almost immediately after Plaintiff resigned as Director of Recreation, the entire Administration staff stopped speaking to her.

93.     During this time period, Mr. Chowdhury advised Plaintiff that she would not be able to take the Court Administrator's test, which is conducted only two (2) times per year.

94.     There was no apparent reason for Mr. Chowdhury to take this position, other than in retaliation for Plaintiff's objection to working in the conflicting position of Director of Recreation and not being paid for her efforts, and/or Plaintiff's objection to giving him digitized Court files, and/or her failure to make political contributions to the Mayor.

95.     In or about August 2021, Judge Abdelhadi advised Plaintiff that she would be reduced to a part-time employee soon because the Borough said it did not have sufficient funds to pay her salary.

96.    The Municipal Court must have a full-time Administrator pursuant to Superior Court rules, and Mayor Khairullah and/or Mr. Chowdhury's plan to reduce Plaintiff to a part-time employee was in violation of the law.

97.    Moreover, Ms. Del Valle-Kasiv, the Court Administrator prior to Plaintiff, had been paid more than Plaintiff, and the Borough had no trouble paying her full-time salary for many years.

98.    Then, on October 12, 2021, Judge Abdelhadi informed Plaintiff that she would be terminated on December 31, 2021.

99.    In October, Judge Abdelhadi sent an email to Sonya Noyes and Judge Meola of the Superior Court confirming that Plaintiff was being terminated on December 31, 2021.

100.   Judge Abdelhadi entered an Order dated January 3, 2022 replacing Plaintiff as Acting Court Administrator.

101.   Plaintiff was never asked by the Borough if she was returning to her position as Acting Court Administrator while she was out on FMLA psych leave.

102.   Since Plaintiff was out on FMLA leave, the Borough would have had an obligation to return Plaintiff to her position when she returned from leave.

103.   Plaintiff confirmed with the Borough Administrator multiple times that December 31, 2021 was her last day of employment.

104.   Since Plaintiff was appointed as Acting Court Administrator on April 1, 2021, she was supposed to remain in her position until March 31, 2022 before facing reappointment, because State statute provides that the term of an interim Administrator is for "one year commencing on the date of appointment," pursuant to N.J.S.A. 2B:12-11(e). See also Borough Code Chapter 5, Article IV, Section 5-40, where appointed officers' "[t]erms shall be one

15

year…"

105.    Since Plaintiff was discharged prior to the end of her statutory term, her separation constitutes a termination rather than a decision not to reappoint.

106.    The Judge said that neither Mayor Khairullah nor Mr. Chowdhury had provided a reason that Plaintiff would be terminated.

107.    Up to the filing date of this pleading, neither Mayor Khairullah nor Mr. Chowdhury have ever spoken to Plaintiff about her termination, and they have never provided a reason for her termination.

108.    Prior to her termination, Plaintiff had already completed the written and oral portions of the Court Administrator certification process, and she only had the project portion remaining, for which she had already submitted an outline to the State.

109.    Because she was discharged on December 31, 2021, she was not able to finish her certification process, and she likely will not be able to complete the process within the next eighteen (18) months if she is not employed, so she will be forced to start the process from the beginning if she is to be certified as a Court Administrator in the future.

110.    If Plaintiff was permitted to finish her statutory term as Acting Court Administrator, she would have been able to finish her certification process.

111.    As a result of the retaliation and hostile work environment that Plaintiff suffered, her mental health began to decline in or about June 2021.

112.    Plaintiff developed severe anxiety and endured grievous emotional distress.

113.    Plaintiff receives treatment from Dr. Gamal Gad in Paterson and is prescribed medication for severe anxiety.

114.    Plaintiff went to see Dr. Gad during her lunch on October 19, 2021 because her

anxiety and stress were overwhelming.

115.    Dr. Gad recognized the degree to which Plaintiff was experiencing emotional distress and he ordered that Plaintiff go out on immediate psychological disability leave.  He initially ordered her out on leave from October 19, 2021 through November 19, 2021.

116.    Plaintiff's psychological leave was eventually extended to December 31st, so Plaintiff ultimately did not return to work prior to the date of her termination.

117.    While Plaintiff was out on psychological leave, the Borough put Ms. Del Valle-Kasiv back in the position of Acting Court Administrator, despite the fact that she is not qualified to serve in that position.

118.    While Plaintiff was out on psychological leave, the Borough went about hiring a new Court Administrator.

119.    The Borough never adopted a resolution regarding hiring a new Court Administrator and the job was not posted on the Borough's website, contrary to Borough policy.

120.    Plaintiff was never advised that the Borough was in the process of hiring a Court Administrator while she was out on FMLA leave.

121.    If Plaintiff had been advised, she would have been able to apply for the position.

122.    Because Plaintiff was never advised that the Borough was hiring a Court Administrator, Plaintiff was deprived of an opportunity to apply for the position.

123.    Plaintiff, who had lived in the Borough for the past eight (8) years, moved out of town in August 2021 because she feared that her children might be impacted by the retaliation and hostile environment to which she was subjected.

124.    Plaintiff was the only employee who was not invited to the Borough's holiday party, even though another employee who is out on disability leave was invited.

125.   When Plaintiff applied for FMLA leave, the process was mishandled and Plaintiff was repeatedly provided with incorrect information.  Plaintiff was told to fill out a State form on the internet that had nothing to do with FMLA leave.  The erroneous information that the Borough provided actually delayed Plaintiff's temporary disability payments.

126.   Plaintiff has suffered adverse employment actions in retaliation for Plaintiff's disclosure and objection to digitizing the Court's files and granting Mr. Chowdhury access to same; for Plaintiff's objection that working as Director of Recreation violated judicial canons, administrative rules and public policy; and, for Plaintiff's objection to not receiving compensation for her work as Director of Recreation.

127.   Plaintiff has suffered adverse employment actions as a result of her disclosures to Superior Court Division Manager Sonya Noyes 1) about Mr. Chowdhury's order to digitize the Court's files and grant him access to same, and 2) about Mayor Khairullah and Mr. Chowdhury's conduct in compelling Plaintiff to work as the Director of Recreation for the Borough contrary to judicial canons, administrative rules and public policy, and despite the fact that she was not being compensated.

128.   Plaintiff has further suffered adverse employment actions in retaliation for her exercise of her rights to free speech and political activity under the First Amendment to the United States Constitution and the New Jersey Constitution of 1947, Article I, Sections 6 and 18.

129.   Plaintiff has been deprived of compensation by the Borough for performing the duties of the Borough's Director of Recreation without pay.

130.   Plaintiff complained that the Borough was not paying her to work as the Director of Recreation, and eventually resigned as a result, and she was retaliated against as a result of

her complaints and was subjected to adverse employment actions.

131.    Plaintiff has suffered a loss of income as a direct and proximate result of Defendants' unlawful conduct.

132.    Plaintiff has suffered severe emotional distress and physical manifestations of emotional distress as a direct and proximate result of Defendants' unlawful conduct.

133.    Defendant has engaged in retaliation against Plaintiff and violated Plaintiff's rights with willful or wanton negligence, or recklessness, and a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard.

## *COUNT ONE*

### *Retaliatory Termination/Hostile Work Environment pursuant to CEPA, N.J.S.A. 34:19-1, et seq.*

134.    Plaintiff repeats and realleges all facts as pleaded in all preceding paragraphs.

135.    N.J.S.A. 34:19-3 states in relevant portion as follows:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
>> a. Discloses or threatens to disclose to a supervisor or to a public body … an activity, policy or practice of the employer … that the employee reasonably believes:
>> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law…
>>
>> c. Objects to … any activity, policy or practice which the employee reasonably believes:
>> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law… or,
>> (3) is in violation of public policy.

136.    Plaintiff made objections to digitizing the Court's files and granting Mr. Chowdhury access to same, which was contrary to law and public policy.

137.    Plaintiff further objected to the fact that working simultaneously as Court

19

Administrator and Director of Recreation violated judicial canons, administrative rules and public policy.

138.    Plaintiff objected and complained to Defendants about the fact that she was performing the duties of Recreation Director without compensation, contrary to <u>N.J.S.A.</u> 34:11-56a25.

139.   Plaintiff disclosed, to the Superior Court's Division Manager Sonya Noyes, Mr. Chowdhury's order to digitize the Court's files and grant him access to same, which was contrary to law, administrative rules and public policy.

140.    Plaintiff also disclosed, to Superior Court Division Manager Sonya Noyes, Mayor Khairullah and Mr. Chowdhury's conduct in compelling Plaintiff to work as the Director of Recreation for the Borough contrary to judicial canons, administrative rules and public policy and despite the fact that she was not being compensated.

141.    Defendants were aware that Plaintiff had complained to the Civil Division, since Ms. Noyes, and even Judge Caposela from the Civil Division, advised the Borough that Plaintiff was not permitted to digitize Court files.

142.    Defendants were further aware that Plaintiff had complained to the Civil Division, since the Civil Division sent a letter to Defendants stating that Plaintiff should not be working as Director of Recreation since the duties of the position conflicted with her duties as Acting Court Administrator.

143.    Plaintiff was subjected to harassment and a hostile work environment by Defendants which included, but was not limited to, compelling Plaintiff to continue to work an extra full-time job on her own time with no compensation, not accepting her resignation as Director of Recreation, leading her on by telling her that she had to work for a limited period of

20

time and then not searching for candidates to fill the position of Director of Recreation, denying Zoom access for the Court, sending her inappropriate communications, advising Administration staff employees to avoid Plaintiff, advising Plaintiff that she was not able to take the Court Administrator's test, advising Plaintiff that she was not able to finish the process to become certified as a Court Administrator, advising Plaintiff that she would be a part-time Court Administrator when the Borough was required by law to have a full time Administrator, advising Plaintiff she would be terminated without providing any reason, refusing to speak with her about her termination, failing to inform Plaintiff that the Borough was in the process of hiring a new Court Administrator and more.

144.    Since Plaintiff was appointed as Acting Court Administrator on April 1, 2021, she was supposed to remain in her position until March 31, 2022 before facing reappointment, because State statute provides that the term of an interim Administrator is for "one year commencing on the date of appointment," pursuant to N.J.S.A. 2B:12-11(e).  See also Borough Code Chapter 5, Article IV, Section 5-40, where appointed officers' "[t]erms shall be one year and until their successors have been appointed and qualified."

145.    Plaintiff was terminated on December 31, 2021.

146.    Since Plaintiff was discharged prior to the end of her statutory term, her separation constitutes a termination for purposes of adverse employment action.

147.    Plaintiff's objections and disclosures were the proximate and direct cause of the hostile work environment and her termination by Defendants.

148.    Defendants have, therefore, violated CEPA.

149.    The conduct of Defendants caused Plaintiff to endure pain and suffering, and extreme and severe emotional distress.

150.    As a result of the conduct of Defendants, Plaintiff has suffered damages in the form of economic loss.

151.    Plaintiff seeks damages from Defendants in the form of the economic losses and recovery for pain and suffering, such that she is made whole by Defendants.

152.    Defendants' termination of Plaintiff and the hostile work environment she endured in retaliation for her objections to Defendants' practices were willful, wanton and malicious, and Plaintiff seeks punitive damages as a result of Defendants' conduct.

153.    Plaintiff further seeks an award of reasonable attorneys fees.

154.    Pursuant to <u>N.J.S.A</u>. 34:19-5 and Sections (d) and (e) thereof, Plaintiff is entitled to damages int the form of lost wages, emotional distress damages, punitive damages and reasonable attorneys' fees.

### *COUNT TWO*

### *Discrimination for Political Activity Against the Borough, Mayor Kairullah and Borough Administrator Chowdhury, in violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.*

155.  Plaintiff repeats and re-alleges the facts set forth in all preceding paragraphs as if set forth fully herein.

156.    The New Jersey Civil Rights Act ("NJCRA"), at <u>N.J.S.A</u>. 10:6-1, <u>et seq</u>., makes it an unlawful employment practice for a public agency to discriminate against an employee, working in a post that does not require political affiliation, for engaging in constitutionally protected political conduct.

157.    The NJCRA states, in relevant part, as follows:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or

any substantive rights, privileges or immunities secured by the Constitution or laws of this State … by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief. N.J.S.A. 10:6-2(c).

158.   Defendant Borough is a public agency, insofar as it is a municipality organized pursuant to N.J.S.A. 40:69-1, et seq., which employs a Court Administrator.

159.   Defendants Mayor Khairullah and Mr. Chowdhury is an official of the Township and they acted in their official and individual capacities in depriving Plaintiff of her constitutional rights.

160.   Plaintiff has been employed by Defendant Borough as a Court Administrator at all times relevant to the Complaint.

161.   The position of Court Administrator does not require political affiliation and is not a policy-making position.

162.   Plaintiff was engaged in constitutionally protected conduct insofar as she refrained from engaging in specific political activity, namely making political contributions to the Mayor, and thus exercised her rights to free speech and political activity under the First Amendment to the United States Constitution and the New Jersey Constitution of 1947, Article I, Sections 6 and 18.

163.   In fact, Plaintiff was prohibited from making political contributions because she served as Acting Court Administrator.

164.   Defendants terminated Plaintiff and subjected her to a hostile work environment as a result of the fact that Plaintiff exercised her constitutional right to refrain from engaging in political activity.

165.    Plaintiff's failure to make political contributions to the Mayor was a substantial or motivating factor in the Defendants' employment decisions to terminate Plaintiff and subject her to a hostile work environment.

166.    Plaintiff has suffered adverse employment actions, as identified above, as the result of violations of Plaintiff's right to free speech and political activity under the First Amendment to the United States Constitution and the New Jersey Constitution of 1947, Article I, Sections 6 and 18.

167.    The actions, failures to act and/or omissions of Defendants in terminating Plaintiff and subjecting her to a hostile work environment as a result of her protected political activity deprived Plaintiff of her civil rights, including the right to free speech and political activity under the First Amendment to the United States Constitution and the New Jersey Constitution of 1947, Article I, Sections 6 and 18.

168.    Plaintiff has been subjected to political patronage discrimination by Defendants.

169.    Defendants have, therefore, violated the NJCRA.

170.    The conduct of Defendants caused Plaintiff to suffer pain and suffering, and extreme and severe emotional distress.

171.    As a result of the conduct of Defendants, Plaintiff has suffered damages in the form of economic loss.

172.    Plaintiff seeks damages from Defendants in the form of the economic losses and recovery for pain and suffering, such that she is made whole by Defendants.

173.    Moreover, Plaintiff seeks punitive damages because Defendants violated Plaintiff's civil rights with willful or wanton negligence, or recklessness, and a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard.

24

174.    Plaintiff further seeks an award of reasonable attorneys fees, pursuant to statute.

### ***COUNT THREE***

***Violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.***
***by Defendants Mayor Khairullah and Mr. Chowdhury in Their Individual Capacities***

175.    Plaintiff repeats and re-alleges the facts set forth in all preceding paragraphs as if set forth fully herein.

176.    The New Jersey Civil Rights Act ("NJCRA"), at N.J.S.A. 10:6-1, et seq., makes it unlawful for state actors, acting under color of law, to deprive employees of their constitutional rights.

177.    Defendants Mayor Khairullah and Mr. Chowdhury are officials of the Borough and are state actors, and they acted in their individual capacities under the color of law in depriving Plaintiff of her constitutional rights.

178.    Mayor Khairullah and Mr. Chowdhury derive their authority from the Borough and are the officials that were responsible for the decision to terminate Plaintiff as Court Administrator.

179.    Plaintiff was employed by the Borough as Acting Court Administrator.

180.    Plaintiff exercised her rights to free speech and political activity under the First Amendment to the United States Constitution and the New Jersey Constitution of 1947, Article I, Sections 6 and 18 by refusing to make political contributions to the Mayor.

181.    Mayor Khairullah and Mr. Chowdhury, under color of state law, terminated Plaintiff and subjected her to a hostile work environment because she refrained from engaging in specific political activity, namely making political contributions to the Mayor.

182.    The actions, failures to act and/or omissions of Mayor Khairullah and Mr. Chowdhury, under color of state law, in terminating Plaintiff and subjecting her to a hostile work

25

environment as a result of her protected political activity deprived Plaintiff of her civil rights, including the right to free speech and political activity under the First Amendment to the United States Constitution and the New Jersey Constitution of 1947, Article I, Sections 6 and 18.

183.    The conduct of Mayor Khairullah and Mr. Chowdhury, as state actors and under color of law, is the proximate, legal and direct cause of Plaintiff's damages.

184.    Defendants Mayor Khairullah and Mr. Chowdhury have, therefore, violated the NJCRA in their individual capacities.

185.    The conduct of Mayor Khairullah and Mr. Chowdhury, as state actors and under color of law, caused Plaintiff to suffer pain and suffering, and extreme and severe emotional distress.

186.    As a result of the conduct of Mayor Khairullah and Mr. Chowdhury, as state actors and under color of law, Plaintiff has suffered damages in the form of economic loss.

187.    Plaintiff seeks damages from Defendants Mayor Khairullah and Mr. Chowdhury, in their individual capacities, in the form of the economic losses and recovery for pain and suffering, such that she is made whole by Defendants.

188.    Plaintiffs seek punitive damages because Mayor Khairullah and Mr. Chowdhury, in their individual capacities, violated Plaintiff's civil rights with willful or wanton negligence, or recklessness, and a conscious disregard of the rights of Plaintiffs or conduct so reckless as to amount to such disregard.

189.    Plaintiff further seeks an award of reasonable attorneys fees, pursuant to statute.

### ***COUNT FOUR***

### ***Liability of Borough of Prospect Park,***
### ***Mayor Khairullah's Final Policy-Making Authority***

26

190.    Plaintiffs repeat and re-allege the facts set forth in all preceding paragraphs as if set forth fully herein.

191.    Mayor Khairullah is an official of the Borough and is a final policymaker, in that there is no further review of the employment decisions that he makes for the position of Acting Court Administrator pursuant to Borough Code Article IV, Section 5-2.

192.    Mayor Khairullah made the decision to terminate Plaintiff as Acting Court Administrator as a result of her failure to contribute to his political campaign.

193.    Accordingly, Mayor Khairullah's decision to terminate Plaintiff as Acting Court Administrator as a result of her failure to contribute to his political campaign constitutes a policy of the Borough.

194.    Defendant Borough has, therefore, violated the NJCRA and is liable for Mayor Khairullah's final policy decisions to terminate Plaintiff as a result of her refusal to contribute to his political campaign.

195.    As a result of the conduct of Mayor Khairullah as final policy-maker, Defendant Borough is liable to Plaintiff for the pain and suffering that such decisions have caused, and Plaintiff's extreme and severe emotional distress.

196.    As a result of the conduct of Mayor Khairullah as final policy-maker, Defendant Borough is liable to Plaintiff for damages in the form of economic loss.

197.    Plaintiff seeks damages from Defendant Borough in the form of the economic losses and recovery for pain and suffering, such that she is made whole by Defendant Borough.

198.    Plaintiff seeks punitive damages because Defendant violated Plaintiff's civil rights with willful or wanton negligence, or recklessness, and a conscious disregard of the rights

of Plaintiff or conduct so reckless as to amount to such disregard.

199.   Plaintiff further seeks an award of reasonable attorneys fees, pursuant to statute.

### *COUNT FIVE*

### *Liability of Borough of Prospect Park, Custom and Practice*

200.   Plaintiffs repeat and re-allege the facts set forth in all preceding paragraphs as if set forth fully herein.

201.   Mayor Khairullah and Mr. Chowdhury have a custom or practice of basing employment decisions upon contributions to local political campaigns.

202.   This custom or practice has the force of law in the Borough.

203.   Plaintiff's was terminated from the position of Acting Court Administrator as a result of this custom or practice.

204.   Accordingly, as a result of the Borough's custom or practice, Plaintiff was deprived of her civil rights, including the right to free speech and political activity under the First Amendment to the United States Constitution and the New Jersey Constitution of 1947, Article I, Sections 6 and 18.

205.   Defendant Borough has, therefore, violated the NJCRA and is liable for its custom or practice which resulted in Plaintiff being terminated as a result of her protected political activity.

206.   As a result of the existing custom or practice, Defendant Borough is liable to Plaintiff for the pain and suffering that such custom or practice have caused, and for Plaintiff's extreme and severe emotional distress.

207.   As a result of the existing custom or practice, Defendant Borough is liable to Plaintiff for damages in the form of economic loss.

208.    Plaintiff seeks damages from Defendant Borough in the form of the economic losses and recovery for pain and suffering, such that she is made whole by Defendant Borough.

209.    Plaintiff seeks punitive damages because Defendants violated Plaintiff's civil rights with willful or wanton negligence, or recklessness, and a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard.

210.    Plaintiff further seeks an award of reasonable attorneys fees, pursuant to statute.

### *COUNT SIX*

### *Denial of Wages pursuant to New Jersey's Wage Payment Law, N.J.S.A. 34:11-56a4(a), 56a4(b)(1)*

211.    Plaintiff repeats and realleges all facts as pleaded in all preceding paragraphs.

212.    N.J.S.A. 34:11-56a4(a) states in relevant portion as follows:

> each employer shall pay to each of his employees wages at a rate of not less than [$12.00] per hour

213.    N.J.S.A. 34:11-56a4(b)(1) provides that any hours over 40 per week that an employee works shall be compensated at a rate of time and one-half (1/1/2).

214.    Defendant Borough is an employer as defined in the Act.

215.    Plaintiff is an employee as defined in the Act.

216.    Plaintiff was employed as the Acting Court Administrator for the Borough, a full-time position, for the period of time from April 1, 2021 through July 22, 2021.

217.    Plaintiff worked approximately forty (40) hours per week as Acting Court Administrator.

218.    In addition to her duties as Acting Court Administrator, from April 1, 2020 through July 22, 2021, Plaintiff performed the duties of the role of Director of Recreation in the Borough, a full-time position.

219.    Plaintiff was required to work, as Director of Recreation, significant hours above and beyond the hours she worked as Acting Court Administrator.

220.    Plaintiff performed the duties of Director of Recreation on her own time, without any compensation from the Borough from April 1, 2020 through July 22, 2021.

221.    Plaintiff was required to work approximately thirty (30) hours per week as Director of Recreation, over and above the time she worked as Acting Court Administrator.

222.    Plaintiff worked approximately 15 weeks as Director of Recreation between April 1, 2021 and July 22, 2021.

223.    Plaintiff therefore worked approximately 450 hours in the position of Director of Recreation between April 1, 2021 and July 22, 2021.

224.    Plaintiff should have been paid at the rate of her salary that she had been receiving as Director of Recreation prior to April 1, 2021.

225.    Plaintiff should have been paid at a rate of time and one-half (1 ½) for all hours she worked over and above forty (40) hours per week.

226.    Defendants have failed to compensate Plaintiff for the wages and overtime that she earned during this period of time.

227.    Plaintiff is entitled to an award of liquidated damages pursuant to N.J.S.A 34:11-56a25 in the amount of an additional 200% of the wages that were not given to Plaintiff.

228.    Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to N.J.S.A. 34:11-56a25 which will be certified by counsel at the time Plaintiff is granted an award.

### ***COUNT SEVEN***

### ***Retaliation pursuant to New Jersey's Wage Payment Law, N.J.S.A. 34:11-56a24(a)***

229.    Plaintiff repeats and realleges all facts as pleaded in all preceding paragraphs.

30

230.  N.J.S.A. 34:11-56a24(a) states in relevant portion as follows:

> Any employer who takes a retaliatory action against any
> employee by discharging or in any manner discriminating
> against the employee because the employee has made any
> complaint to his employer … that he has not been paid
> wages in accordance with the provisions of this act … shall
> be guilty of a disorderly persons offense [and] …
> The employer shall also be required, as a condition of such
> judgment of conviction, to offer reinstatement in
> employment to the discharged employee and to correct any
> such discriminatory action, and also to pay to any such
> employee in full, all wages lost as a result of such discharge
> or discriminatory action and an additional amount of
> liquidated damages equal to not more than 200 percent of the
> wages lost, under penalty of contempt proceedings for
> failure to comply with such requirement.

231.  Plaintiff objected and complained to Defendants about the fact that she was performing the duties of Recreation Director without compensation, contrary to N.J.S.A. 34:11-56a25.

232.  Plaintiff was terminated by Defendants.

233.  Plaintiff was subjected to a hostile work environment by Defendants.

234.  Plaintiff's complaints and objections were the proximate and direct cause of her termination and hostile work environment by Defendants.

235.  Accordingly, pursuant to N.J.S.A. 34:11-56a24(a) and N.J.S.A. 34:11-56a25, Plaintiff is entitled to lost wages, liquidated damages, and costs and reasonable attorneys' fees.

### *COUNT EIGHT*

### *Quantum Meruit*

236.   Plaintiff repeats and realleges all facts as pleaded in all preceding paragraphs.

237.   Plaintiff worked in the position of Director of Recreation between April 1, 2021 and July 22, 2021 and performed all job duties associated with the position.

31

238.    Plaintiff's performance met or exceeded expectations at all times.

239.    Plaintiff was not compensated for her work.

240.    Plaintiff received a salary when she was formerly employed exclusively in the position of Director of Recreation, prior to April 1, 2021, which salary should be the measure of Plaintiff's damages.

241.    Plaintiff is entitled to recoup from Defendants compensation and overtime at the rate of her salary for the time that she worked as the Borough's Director of Recreation from April 1, 2021 through July 22, 2021.

### *PRAYER FOR DAMAGES*

**WHEREFORE,** good and just cause having been shown, Plaintiff demands judgment on all counts against Defendants, and seeks the following relief as to each count:

A.    Compensatory damages, including but not limited to, damages for economic losses, back pay, front pay, lost wages and overtime, pain and suffering, severe emotional distress and psychological injury;

B.    Liquidated damages in the amount of 200% of the wages withheld from Plaintiff;

C.    Liquidated damages in the amount of 200% of the lost wages that Plaintiff suffered as a result of retaliation for her complaints;

D.    Punitive damages;

E.    Attorneys' fees and costs of suit;

F.    Equitable relief;

G.    Pre-judgment interest;

H.    Post-judgment interest;

I.    A judgment award inclusive of payment to offset negative tax consequences of a lump sum injury

award; and,

J.      Such other relief as the Court and/or Jury deems
        just, equitable and appropriate.

### ***JURY DEMAND***

Plaintiff demands a trial by six (6) jurors of his peers as to all claims and defenses
raised in this matter.

### ***CERTIFICATION OF NO OTHER ACTIONS***

Pursuant to <u>R.</u> 4:5-1, it is hereby stated that the matter in controversy is not the subject
of any other action pending before any court of this State, a court of any other State, or a
Federal court. No other court action is contemplated, to the best of my knowledge and belief.
Further, other than the parties set forth in this pleading, I know of no other parties that should
be joined to this action. I recognize the obligation of each party to file and serve upon all
parties and the Court an amended certification if there is a change in the facts set forth in this
certification.  I hereby certify that the foregoing statements made by me are true to the best of
my knowledge and belief.  I acknowledge that if the foregoing statements are willfully and
knowingly false, I may be subject to punishment.

## *<u>DESIGNATION OF TRIAL COUNSEL</u>*

Pursuant to <u>R.</u> 4:25-4, Nicholas P. Milewski, Esq. of Mets Schiro & McGovern, LLP

is hereby designated as Trial Counsel in this matter.

Respectfully submitted,

**METS SCHIRO & MCGOVERN, LLP**
838 Green Street, Suite 102
Iselin, New Jersey 08830
Tel. (732) 636-0040
Fax (732) 636-5705
E-Mail: <u>nmilewski@msmlaborlaw.com</u>
*Attorneys for Plaintiff, Kaity Acevedo*

By: _____
NICHOLAS P. MILEWSKI, ESQ.

Date:  January 7, 2022

34

# Civil Case Information Statement

**Case Details: PASSAIC | Civil Part Docket# L-000070-22**

**Case Caption:** ACEVEDO KAIRY  VS BOROUGH OF
PROSPECT  PARK

**Case Initiation Date:** 01/07/2022

**Attorney Name:** NICHOLAS P MILEWSKI

**Firm Name:** METS SCHIRO & MCGOVERN, LLP

**Address:** 838 GREEN STREET SUITE 102
ISELIN NJ 08830

**Phone:** 7326360040

**Name of Party:** PLAINTIFF : Acevedo, Kairy

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE
PROTECTION ACT (CEPA)

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Kairy Acevedo?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

01/07/2022
Dated

/s/ NICHOLAS P MILEWSKI
Signed